Good morning, good morning Your Honor, Your Honors. May it please the Court, John Moran from Binder and Binder for the appellant Marcia Samuels. Marcia Samuels has a long and distinguished work history. She became disabled at the age of 57 years of age. She suffers from bipolar disorder. In the past she has worked as a lawyer and in the pharmaceutical industry. The claimant was making as much as $87,000 a year in her past work. On Social Security she would be eligible for approximately $27,000 a year. The claimant treated since, I think it was 2004, with Dr. Flammenbaum, her long time treating psychiatrist. Dr. Flammenbaum assessed that the claimant suffered from bipolar disorder. The record clearly demonstrates that in 2002, 2003 the claimant had suicide attempts. In 2009 she had a hospitalization as a result of her bipolar disorder. Again she had a hospitalization in 2012 as a result of her bipolar disorder. All of the doctors that provided an opinion in this case were of the opinion that the claimant was unable to sustain any work in the national economy by reason of the RFC assessment that they provided. Is that a call under our system that's left to the doctors or is that a call that's left to the ALJ? I think that the doctors, particularly the treating doctor, is entitled to controlling weight where their opinions are supported by their treatment records unless good cause is shown as to why those opinions would be ignored. Is it the doctor's opinion about her medical status or about what job she's capable of doing? I think that the doctor makes a determination. The doctor makes a determination as to what the claimant's condition is and how that condition affects her residual functional capacity. The ALJ would take that evidence because that's substantial evidence as to the claimant's ability to do work functions and then incorporates that assessment into a hypothetical question that they would proffer to a vocational expert. In this case, Dr. Flammenbaum found that her residual functional capacity as the result of the well-documented finding that she suffers from bipolar disorder would be providing an RFC that would be inconsistent with work. If that hypothetical were proffered to the vocational expert, it's clear that at step four and five of this process, the vocational expert would be compelled to testify that the claimant would be unable to sustain any employment whatsoever in the national economy. Did he assert that she couldn't sustain any employment whatsoever in the national economy or that she couldn't continue her prior work as an attorney? I think he provided two opinions, one in narrative form and one in response to the questionnaire. When he responded in narrative form, he indicated that the claimant suffers from bipolar disorder. These were all the issues that she had and she certainly couldn't work as an attorney anymore. It doesn't necessarily follow that just because she can't work as an attorney anymore that she can do other jobs. That's a fallacy. The follow-up question has to be, well, can she do other jobs? In this instance, Dr. Feynman-Bowne provided a clarification in the terms of the questionnaire and the responses that he provided in the questionnaire as to the ability to do any work in the national economy, five days a week, eight hours a day. Those responses are inconsistent with full-time competitive work. He opined that she would be absent more than three times per month. The vocational expert said that under those circumstances, such a person wouldn't be unable to perform any jobs. He indicated that she had moderate impairments in concentration, persistence, and pace, which as defined would prevent the claimant from doing any job in the national economy. The vocational expert testified that even 15% off-task would preclude any jobs. There's a suggestion that the ALJ properly reviewed Dr. Feynman-Bowne by suggesting that he was referring only to her past work as a lawyer. That's sheer speculation, first off, because even if just the narrative was presented in the record, the narrative does not say that she's able to do work. It says that she's unable to work as a lawyer. But when you combine that with the second part, can she work as a lawyer? No. Well, can she do any other work? His answer is no by virtue of his residual functional capacity assessment. For my part only, I speak only for myself, I'm extremely sympathetic because the evidence does demonstrate that your client certainly has a disability. But under the standard of review, it appears to me that perhaps the ALJ did consider all this evidence and simply came to a different conclusion about it. But the ALJ is making a lay assessment of this record. That lay assessment cannot serve as substantial evidence. He doesn't have medical evidence that supports his conclusion that she's able to work. He is reviewing Dr. Feynman-Bowne's record, the record of the other psychiatrists in the record and saying, based on my lay opinion, this claimant can do work. The ALJ in this particular case, which happens every day in these cases, could have had the final record reviewed by a doctor. He could have had a doctor in the hearing testify as to what he believes this record shows. He didn't do that. Is it appropriate for, if the treating, aren't treating physicians supposed to be given more weight than a doctor who comes and evaluates and is not a treating physician? Absolutely. Well, what I'm suggesting is, I would still argue that you would have to, the treating doctor's opinion should be controlling, unless it's inconsistent with the record. No, I understand that. But the administrative law judge cannot discount the treating physician's testimony or evaluation unless it completely is contradicted by the evidence, the medical evidence. That's correct. And even Social Security's doctor in this case was of the opinion that the claimant's full-time competitive work. In fact, the administration granted the claimant benefits in this case. And isn't the issue with the particular disability that your client has, bipolar disorder, is that you can, you have highs and lows and you can be doing well at one moment in time and then not? That's exactly the issue in this case. The records demonstrate that she cycles, that she has periods or days where she's doing pretty well. She reports doing well, but then if you look at the record, the treating psychiatrist actually increases her medications. Because I think that psychiatry is an art. And the person is doing more than just accepting responses. They're also reading the patient's body language, talking to family members. You can see consistently throughout this record, this claimant is on at least four different significant psychiatric records throughout. And these medications keep being increased and decreased because she has different problems adjusting. She's having problems with sleep. She says she's starting to feel a little bit different. She is depressed. She is, one minute she thinks her husband is a wonderful man in the record. The next minute the police are being called to the home. These are all evidence of the bipolar disorder that she suffers from. And it is not for the lay person to dismiss the opinion of the long time treating doctor. Almost 10 or 11 years this doctor treated with the claimant. It's clear that bipolar by its nature has ups and downs, right? So what in your view would a potential claimant need to show, if anything, beyond a diagnosis of bipolar disorder in order to qualify for benefits? In other words, if you have bipolar disorder, is it automatic or is there something else that you need to have evidence of? Absolutely not. Number one, you would have to have support from a medical expert. If you have support from a medical expert that's treated you over years, that should be given great weight. But then we would want to- I guess what I'm trying to get at is what do you mean by support? What would that medical expert need to show other than just that you had a diagnosis of bipolar disorder? I think that the medical expert would have to provide an opinion as to the person's ability to maintain concentration, persistence, and pace. The person's ability to appropriately socially interact with others. The person's ability to show up for work in a timely manner, five days a week, eight hours a day. That psychiatrist or psychologist is in the best position to make those type of assessments. The second part of it is you can go back to the record and see what's going on in the record. In this case, we have two psych hospitalizations. The judge minimizes it. But there's psych hospitalizations in one case because she was found in a fetal position. And throughout the record, the doctor continues to maintain these four medications. He doesn't ever take her off the medications completely. If we saw that in the record, and we saw no psych hospitalizations, and we saw that she was doing things that were consistent with work, we may be able to say that the record doesn't support the doctor's opinion. But it certainly supports the doctor's opinion here, where it continues to note that she's irritated, hostile, depressed, not sleeping. And there are other moments where she's doing better. So this is not the case, though, where on every visit, we see the claimant's doing fine. I'm lowering her medications. She's doing better. I don't need to see her again for another three months. That's not what happened here. If Judge Martin will permit me one more question, because I see your time is up, do we have evidence that at times when your client was taking her medication, she had these same symptoms, or are all of her declines at times when she was not taking her medication? No, I think that the record shows, first of all, she's manic depressive. So a person that's manic becomes elated, they feel better. The medications are very sedating. She says in the record that she has bad side effects from these medications. It's not unusual for somebody that suffers from this condition to continually attempt to remove themselves from the medications. But even on the medications, the record does demonstrate that the notes say that she's irritated, angry, she's depressed, and then other times she's doing better. But it's a back and forth. It's the cyclical nature of the condition. And just to identify those indications in the record which say that she's doing well does not support the finding that the ALJ came to in this case. Thank you. Thank you. You have saved your time for rebuttal, so we'll hear from you again. Good morning. Mr. Witt, before you start, this court recently, since this was briefed, I believe, we decided the Schenck case, if I'm pronouncing that correctly, and we recognized the episodic nature of bipolar disorder. So would it not make sense for this panel to just remand Ms. Samuel's case to be re-evaluated under the standards our court developed in Schenck? I would think not, Your Honor. For the reasons this court in Ross, which was a post-Schenck case. And unpublished. And unpublished. Right. And PTSD, not bipolar.  I would say that Ross is also persuasive. Schenck did speak of the episodic nature of bipolar disorder, and the claimant in that case was severely disabled due to the mental impairment. Numerous hospitalizations, and was rarely stable. In other words, it's the opposite of this case. There were times in this case where the claimant experienced exasperations of her symptoms, but most of the time, if you look at the longitudinal record, she was stable when on medications. But the issue is, since Schenck, we're obviously a panel of three, we're not an en banc panel. Schenck is now president of this court in a way that Ross is not. The question is, the ALJ in this case gave less weight to the opinion of the treating physician, and in Schenck, the court said that there has to be something in the record. The ALJ must give a treating physician's opinion substantial or considerable weight unless good cause is shown to the contrary. And so, to go to Judge Martin's question, why should this not be remanded to further evaluate the case based on the now controlling authority of this circuit? Well, because Dr. Flemmingbaugh's opinion is inconsistent with the evidence. And this distinguishes it from Schenck because the ALJ in that case did not do a good job of showing it was so. In addition, claimant consistently reported that she was doing well or great with primarily normal findings and mental examinations over and over and over again. She had only, in Schenck, as I said, the claimant had only brief periods of stability in contrast to claimant who had brief periods of significant symptom exacerbation. I think Ross, in terms of the law, is not different than Schenck. It's the application of the law to the particular facts of the case. And I would say that the facts of this case are more akin to the claimant's facts in Ross than they are in Schenck. It's different disabilities. PTSD is not bipolar disease. Right. That's true. You're right. It's something else that bothers me about this case.  I don't know. I'll bring it up. So it looked like to me, you know, at step two, the ALJ made an affirmative finding that the claimant had the severe impairment of bipolar disorder, yet when the ALJ posed the hypothetical to the vocational expert, didn't include that. Isn't that what happened here? That's what happened. But that's permissible because an RFC or a hypothetical posed to the VE does not have to mention the specific impairments. That's a pretty big, I mean, it's a significant impairment. Right. But what's to be included in the RFC and the hypothetical are the limitations resulting from the impairments, not the impairments themselves. Winchell says a bit about that in the context of moderate difficulty. But their argument is that the hypothetical didn't include all the symptoms of the impairment. And so, you know, that's a problem. Right. Well, symptoms are not limitations. Symptoms also. I mean, you're a specialist in this area. I'm not. I mean, I'm just saying, you know, the effects of bipolar disorder, I mean, their argument is didn't include in the hypothetical the effects of that were not completely considered by the vocational expert in arriving at the opinion that she could work. The ALJ accounted for her bipolar disorder by limiting her to simple work instructions and to only occasional interaction with the general public. And that's what the ALJ is charged to do, to take into account the entire record what limitations flow from the impairments that are severe or and also non-severe. And in this case, the ALJ accounted for the bipolar disorder by limiting her to basically unskilled work. What about the inability to get to the office during an episode? Is that something that was considered? Well, are you speaking to the record? Was there an incident of that? I'm saying, I think I've heard, I've heard suggestions that this individual would be unable to consistently be at work. Was that considered? Because even unskilled labor, you have to actually show up for it. Yeah, that was Dr. Flemingbaum's opinion in the questionnaire. But the ALJ rejected it because, looking at the longitudinal evidence, the ALJ concluded that these marked limitations, these severe limitations, were simply inconsistent with someone who... But how can the ALJ discredit or disregard the treating physician's evaluation? Well, under 20 CFR 404.1527C, the ALJ considers the factors listed there in weighing a doctor's opinion. And those factors include things like the specialty of the doctor, whether the doctor gave supporting objective evidence to support the opinion, which Dr. Flemingbaum did not do in this case. And then also, does the objective evidence, medical evidence, and other evidence of record support the doctor's opinion? And if it doesn't, then the ALJ may discount the doctor's opinion. This court has repeatedly said that... I'm still worried about this hypothetical. I'm just not quite satisfied. So I think, didn't the hypothetical, the ALJ told the vocational expert that Ms. Samuels could interact with the public on a routine basis or something like that? And that doesn't fully consider the effects of bipolar disorder, does it? Well, it depends on the person because people with bipolar disorder are at different levels of functioning. There are many people... So back to Schenck, some days are good, some days are bad. I mean, there might be days where she couldn't interact with the public and the vocational expert had been instructed to assume that she could. But some people with bipolar disorder function very well and are able to hold down jobs for many, many years because they are taking the medication as prescribed. In this case, there's countless examples of time and time again, claimant stopped taking her medications. And this is what precipitated her two hospitalizations over the six-year period and the exasperation of her symptoms. Most of the time, when she was on her medications, she had mild to moderate symptoms. And back to your question about the RFC, hypothetical questions do not include, by name, impairments. They only include limitations stemming from the impairments. I've got that right. I mean, the hypothetical that the vocational expert was instructed to decide from included the fact that Ms. Samuels could interact with the public. Only occasionally, yes. As opposed to frequently or constantly. This case, your honors, definitely does present conflicts within the evidence, there's no doubt about that. In our brief, we cite Wheeler, which held that in a social security case that does present conflicts within the evidence. It is the ALJ, not the court, not the claimant, who is charged with the duty of resolving the conflicts. And that's what this ALJ did in this case. Judge Grant referenced the standard of review earlier. Under the highly deferential standard of review in social security disability cases, which is substantial evidence, if more than a scintilla of evidence exists to support the ALJ's findings, a reviewing court must affirm. And moreover, as this court reiterated in Phillips, a reviewing court may not decide facts anew, a reviewing court may not reweigh evidence, a reviewing court may not substitute its own judgment for that of the commissioner. And our position is that this court can affirm the ALJ's decision in this case because the ALJ took her duty to resolve the conflicts of the evidence very seriously. She discussed the evidence at length, the overall record, and her factual findings are amply supported by the record. Now this court may conclude that the evidence preponderates against a particular finding of hers. For example, the RFC, the hypothetical. But as long as substantial evidence, which is a scintilla, supports the ALJ's finding, the court is bound to affirm under the standard of review that Congress established in the Here, the ALJ properly found that the claimant's bipolar disorder was a severe impairment. And then in assessing her mental RFC, she considered the record as a whole and she gave good reasons, supported by substantial evidence, for the weight she gave to the various medical opinions. And as we pointed out in our brief, and I note that claimant did not dispute in reply, at a majority of the appointments she had with treating psychiatrists, claimant reported that she was doing well or great, she was stable on her medications, and she demonstrated unremarkable findings on mental status examinations. Moreover, no treatment records indicate claimant had any specific mental limitations on her ability to function. Now the ALJ discounted plaintiff's subjective allegations of disabling symptoms for similar credibility determination. Treatment providers repeatedly noted in the progress notes that claimant was doing well and stable when taking her medications, and although claimant did complain at times of situational or environmental stressors, in particular related to her relationship with her husband, a daughter attempted suicide, the treatment records never describe her as completely being disabled or unable to function, particularly for any 12-month consecutive period, which is the duration requirement that the Social Security Act imposes. Moreover, at times... And now our court requires that, you know, it doesn't have to be continuous. If there's an episodic nature to the disability, that has to be considered. Oh, definitely, you're right, Your Honor. But I would say that she was not severely episodic, unlike the claimant and Schenck. She was mostly stable with occasional episodes that were usually associated. But that didn't... I mean, the ALJ didn't consider that. Well... They didn't consider the episodic nature, that there would be bad days as well as good days. Well, the ALJ noted the accident patients and their symptoms, did not use the word good days and bad days, but did talk about episodes of exasperation, being symptom increases due to environmental stressors. The ALJ discussed that. The ALJ also discussed the hospitalizations. And moreover, you know, at times after the alleged onset period, and even after 2009, a claimant testified that she had stopped working entirely after 2009, but the record indicates that several times she told medical providers that she was working as a lawyer on at least a part-time basis after 2009. And she also, in treatment notes, described that she had good relationships with others. She was able to take care of her grandchildren. She was doing some sort of charity work during this time. And these activities undermined her allegations of disabling limitations. And finally, your honors, the hypothetical, the ALJ posed to the vocational expert, as I said earlier, fully accounted for her mental impairment, including her moderate difficulties in the broad functional areas of social functioning and concentration, persistence, or pace, because the ALJ limited her to short, simple work instructions and to occasional interaction with the public. And this resulted in the ALJ ultimately finding that she can only do unskilled work. And the vocational expert identified three jobs that did not require more than simple instructions and did not involve more than occasional interaction with the public. And of course, under the Social Security Act, the question is not, does the person's impairments limit them to a point where they cannot perform the work that they're accustomed to? In this case, a lawyer. She also worked in the pharmaceutical industry. The question is, is there no work whatsoever that the person can do given their limitations? That's the RFC, given their vocational background. And here, the ALJ found that she could do some other work. Thank you. I would just like to note that there is no medical evidence in the record to suggest that the claimant can work. There's no dispute that the ALJ has to reconcile. We don't have a treating doctor from Social Security that indicates that I believe that the plaintiff can sustain simple, routine, repetitive work over the course of a workday. The treating doctor says that she cannot do that. And the Social Security doctor at 102 in the record specifically states, due to severe bouts of depression, the claimant would not likely perform activities within a schedule and maintain regular attendance. She is quite withdrawn and isolative and would have difficulty interacting with others in a competitive setting. That is completely consistent with the treating doctor. There's nothing for the ALJ to reconcile in this particular case. The hypothetical to the vocational expert does not take into consideration the claimant's ability to persist and maintain pace. Let's assume for the sake of argument that she can understand simple tasks and complete a simple task. That does not mean that she's taking into consideration her ability to show up for work on time, to perform those simple tasks throughout a workday, and to show up five days a week and complete those simple tasks. So this hypothetical is not supported by the record. The record, the opinion of the treating doctor, the opinion of the Social Security doctor, is that the claimant would be unable to do those things. That is the medical evidence in the record. That is the substantial evidence in this record. The vocational expert said that more than one or two unscheduled, unexcused absences would not be tolerated or would become a problem, I think is the language. He also says that if she was off task 15% of the workday or more, she would not be able to maintain employment. The vocational expert's testimony would have precluded the claimant from doing all work. Counsel references Ross. I would say Your Honor notes that bipolar is different than PTSD. I will also note that in the record in Ross, there's evidence that the claimant was teaching motorcycle classes for several hours per day, three hours at a time. There's no psych hospitalizations in Ross. Ross is a completely different case than this case. This case is more in line with Schenck and it's more in line with Winchell in that the ALJ did not properly provide substantial evidence for his opinion as to the claimant's RFC. For these reasons, Your Honor, I think that a remand is appropriate in this case. Thank you very much. We appreciate the argument. We are going to take a five-minute break before